



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DANIEL L. LEY
REBECCA G. LEY

    Plaintiff,

  v.

SUNTRUST BANK,
SUNTRUST MORTGAGE, INC.
Defendants.

)
)
)
)
)
)
)
)

Case No. **1:09-CV-2972**

COMPLAINT FOR DAMAGES
VERIFIED COMPLAINT FOR
 DAMAGES & OTHER EQUITABLE
 RELIEF

---

### COMPLAINT FOR DAMAGES

COMES NOW, Daniel L. Ley & Rebecca G. Ley, and hereby referred to as Plaintiffs files this Complaint For Damages against Suntrust Bank, complain and allege as follows:

I.

**PRELIMINARY STATEMENT**

1. This Complaint is filed against Suntrust Bank hereby referred to as defendants"):

 (a) Fraud, fraud in the inducement, gross negligence, Negligent misrepresentation, failure to mitigate.

1

COMPLAINT FOR DAMAGES

(b) Unfair Business Practices, Unlawful seizure of
Property, Tortious Interference With Business
Relations.

(c)  for noncompliance of the rescission process;

(d)  for reimbursement of all fees and costs paid and
expended in a consumer credit transaction pursuant to
violations of the Truth in Lending Act violations,15 U.S.C.
§§ 1601 et seq.(hereinafter "TILA"), and its implementing
regulations at 12 C.F.R. § 226 et seq. (Reg. Z);

(e)  for statutory and actual damage; and

(f)  for reasonable attorney fees

2.    A   rescission   action   may   be   brought   against   an
assignee, regardless of whether the assignee is a "creditor"
or whether the violation was apparent on the face of the
disclosure statement under 15 U.S.C. § 1641(c).

3.    All   claims   amount   to   a   serious   breach   of   these
Defendants' fiduciary duties and resulted in Plaintiff being
unable to make regular payments on his mortgage loan.

4.    Plaintiffs also seek declaratory and injunctive relief
to further restrain these Defendants under Georgia state law for
common law fraud and fraud in the inducement, misrepresentation
and deceit, against Defendants herein. All such Georgia claims

-2-

are properly asserted under this Court's pendent or supplemental jurisdiction.

## II.
### PARTIES

5.

Plaintiff's Daniel L. & Rebecca G. Ley are consumers and natural persons as that term is defined under 15 U.S.C. § 1602(h) and is a citizen and domiciled here in Georgia, and is the owner of the principal dwelling known as 1845 Hadfield Blvd., Roswell, Georgia, 30075 (hereinafter the "Subject Property"), which is currently collateral on a secured first mortgage loan originally held by Defendant Suntrust Bank. At all times relevant and material hereto, Plaintiff resided and still resides in the subject property as his family home.

6.

Defendants Suntrust Bank were or are currently creditors as that term is defined under 15 U.S.C. § 1602(f) and Reg. Z § 226.2(a)(17) and at all times relevant hereto are regularly engaged in the business of extending consumer credit for which a finance charge is or may be imposed and is payable in more than four installment by written agreement. These Defendants may be served with service of process by serving as follows: Suntrust Bank, Atlanta, Georgia

7.

Defendant Suntrust Bank is a Georgia Corporation doing business in the State of Georgia.

8.

Defendant Suntrust Mortgage, Inc., 350 North lake Destiny Rd., Maitland, Florida 32751 is a Florida Corporation doing business in the State of Georgia.

9.

Upon information and belief, Defendant Suntrust Mortgage, Inc. is an assignee of the mortgage on the subject property and its parent company Suntrust Bank is currently the Servicer of mortgage loan transactions pursuant to a Master Pooling and Servicer Agreement.

### III.

### JURISDICTION AND VENUE

10.

This Court has Jurisdiction in this proceeding pursuant to a federal question under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 1640(e) for TILA claims, pursuant to 12 U.S.C. § 2614 for RESPA claims, and pursuant to 28 U.S.C. § 1367 for supplemental jurisdiction of Plaintiff's state law claims. Plaintiff's state law claims are so related to the claims

-4-

within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution. The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201. Counts arising under contract, common law, and the law of conveyances in real property are properly asserted under this Court's pendent jurisdiction.

10.

Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 generally and whereby the real property and a substantial part of the events and claims, the subject of this suit, are situated here, the mortgage papers were signed in this district, communications notifying Plaintiff of potential default on his mortgage were in this district, and Defendants do business in the State of Georgia.

IV.

## **CONDITIONS PRECEDENT**

11.

All conditions precedent have been performed or have occurred.

12.

The mere loss of a statutory right to disclosure is an injury that gives the consumer standing for Article III purposes, DeMando v. Morris, 206 F.3d 1300 (9th Cir. 2000).

13.

Plaintiff has standing as of the date of the contract and where the contract is a federally related mortgage transaction governed by TILA.

V.

## STATEMENT OF FACTS

14.

The federally related mortgage transaction at the root of this case was closed with all purported documents signed on or about August 14, 2007 (the "Closing").

15.

Plaintiff contacted Suntrust Bank through a loan originator Mr. Fernando Rucabado, branch loan originator in the Lake Nona area of Orlando, Florida about a possible refinance of his then existing mortgage of his personal residence 10108 Chorlton Circle, Orlando, Florida 32832 and subject property purchased on May 9, 2005.

16.

In 2007 the Plaintiff's decided to move to Atlanta, Georgia as a second home and Mr. Rucabado, Suntrust Mortgage began a series of four loans over a thirteen month period that were both predatory and made negligent and false misrepresentations to the Plaintiff's that left them over financed on both homes.

In addition, Plaintiff's were adivised by Mr. Rucabado that they needed to borrow from Plaintiff's 401K retirement account

To come up with the down payment for the second home. This amounted to borrowing money to borrow money for the down payment which is illegal under Fannie Mae, Freddie Mac underwriting guidelines. Once in Atlanta the Plaintiff's were

Unable to rent or sell their Orlando home. Realtor's for both

Houses were to sell either home. On July 4, 2009 Plaintiff's moved back to Orlando once a short sale was initiated in Atlanta. Loss mitigation at Suntrust Bank told Plaintiff's and

Realtor Tricia Leuallen that short sale was forthcoming. Suntust then changed the locks on the home and did an illegal

Seizure of the home and failed to provide realtor with a key, further inhibiting any attempt to show the home and mitigate

Damages. In August, 2009 Atlanta property became flooded due to torrential rains and realtors nor Plaintiff's who were still paying property insurance could enter the house to assess damages. Now the property lies vacant and there is extensive mold damage and property value has depreciated from $582,500 purchase price to an estimated value of $200,000.

17.

Plaintiff's have applied for a modification and were
Led to believe they could receive one. During the process
Plaintiff's received notice of foreclosure and property is
scheduled to foreclose on November 3, 2009.

18.

Near the end of the rushed closing and upon discovery of
the "fixed rate loan" was only fixed for two years which then
would switch to an adjustable rate after 24 months, the loan
officer, who was present at closing, stated "do not worry, we
can buy it down in 2 years" and told Plaintiff not worry, just
sign the papers.

20.

Evidently, Plaintiff qualified at an initial teaser
adjustable rate of 7.75% despite the fact that Plaintiff could
not have qualified at 13.75% the lifetime rate cap or anything
other than the initial rate.

21.

Additionally, on June 29, 2006, when Plaintiff locked his
mortgage rate of a fixed rate of 7.75%, the average market
rate was 6.78% for a 30-year fixed and 6.43% for a 5-1 ARM.

21.

Further, this was not the first time Plaintiff had
refinanced the subject property and each time was lead into a
loan that was not a conventional, regular fixed rate loan.

22.

Plaintiff relied up the loan originator, the lender and the
closing attorney to deal fairly and honestly with him and get
Plaintiff the best possible loan and rates possible.

23.

However, the loan officer and lender placed Plaintiff in a
loan that not fixed and was a point higher than average
current market rates despite the fact that Plaintiff had paid
1.5% in points to buy down the rate.

24.

This is an example of predatory lending at its worst as the
loan officer and lender took advantage of Plaintiff lack of
knowledge of the mortgage rate and lender market.

25.

During the course of refinancing his home several times,
Plaintiff's payments went from approximately $2,800 per month

to

approximately $4,000 per month to $5193.99 per month and were
scheduled to increase to $5,583.54 after 24 months, $6,002.30
after 36 months, and to $6,049.12 after 48 months.

25.

Plaintiff tried after 24 months to refinance and buy down
the rate as he was promised but could never qualify to do so
at fair and reasonable terms.

26.

With the recent downturn in the economy, Plaintiff can no
longer cover  payment which was excessive based on the true
value of his home at the time of entering into the mortgage
with Suntrust Mortgage and the current interest rates
available at the time of securing his loan.

27.

Additionally, Plaintiff did not receive his Truth In
Lending ("TIL") statement 72 hours prior to closing.

28.

Receiving is TIL earlier would have allowed him to examine
the loan carefully and compare what had been promised with
what actually was on the note.

29.

Further, Plaintiff did not receive his HUD-1 at least 24
hours prior to closing which would again given him time to go
over the documents and costs.

30.

Plaintiff's four loans qualified for a refinance subject to
A three day right of rescission. However, Plaintiff was
denied that right and under 15 USC 1635 (a-f) the right to
Cancel can last for as long as three years after the loan is
Made and the second right to rescind can also be triggered by
The lender starting foreclosure proceedings. The Plaintiff's
have send Suntrust Bank as 20 day notice to rescind loan. The
Cost of rescission to the lender is all of the interest, fees,
Costs and any other charges not directly for the benefit of
the borrower.

31.

Additionally, his appraisal was inflated by at least 17% -

20% which allowed him to refinance the subject property at the closing which in fact, his best interests would have been served by not refinancing with Suntrust Mortgage at that time.

32.

Plaintiff tried for a modification and was later turned down.

33.

No new appraisal was done at that time despite a downturn in the real estate market.

34.

According to the lender as of October 2009 there was $53,859.82 due for interest accrued and unpaid, costs and expenses which was capitalized and added to the then principal balance of $

35.

Needless to say, every time Plaintiff dealt with the lenders involved in the case, he got deeper in debt and was financially harmed.

36.

But for the fraud in the inducement, Plaintiff would not be currently behind on his mortgage.

37.

Plaintiff did not uncover the true facts and extent of deceit involved in the securing of his original loan until he had a forensic audit of his mortgage done after he was turned down for a modification in 2009.

38.

Plaintiff residence is currently valued at somewhere between $200,000 and $250,000 according to a desktop appraisal.

39.

The Transaction at the heart of this case was not created, or entered into, to finance the acquisition or initial construction of Plaintiffs' dwelling and failed in multiple material respects to disclose to Plaintiff in a form and manner required by applicable statute and regulation, the true cost of the credit transaction (hereinafter the "Transaction").

40.

The Transaction, required Plaintiff to pay money arising

out of a transaction in which money, property, or goods and services were the subject thereof and the same were primarily for personal, family and household purposes.

41.

The Transaction is a Consumer Credit Transaction as that term is defined under 15 U.S.C. § 1602(h), 1635(a), and Reg. Z § 226.2(a).

42.

The Transaction is a Closed-end Credit Transaction as that term is defined in Reg. Z § 226.2(10) where a security interest was retained by the purported lender.

43.

The Transaction allegedly paid off a previous refinanced and consolidated mortgage transaction.

44.

The Transaction is subject to requirements set forth in 15 U.S.C. § 1638 and Reg. Z §§ 226.17 – 226.24.

45.

The following material documents related to the Transaction were unlawfully not provided to Plaintiff at the proper time frames:

(a) Good Faith Estimate;

(b) HUD-1 Settlement Statement;

(c) Handbook on Adjustable Rate Mortgages

(d) Right to Cancel Notices

(e) Business Affiliations Disclosure

(f) Disbursal Disclosures

(g) Itemization of Amount Financed Disclosure

(h) Equal Credit Opportunity Act Disclosure

(i) Truth In Lending Disclosure

46.

The Defendants failure to provide Plaintiff with a complete copy of all mortgage loan documents, signed by both the Defendants and the Plaintiff, within three days of any alleged consummation is egregious, deceitful, unscrupulous and done with intentionality.

47.

26.    As a result of Defendants failure to provide any Truth in Lending Disclosure Statement with accurate "Finance Charges, Annual Percentage Rate, Amount Financed, and Total of Payments" under 15 U.S.C. §1602(u), and failure to provide all

material disclosures correctly with a proper Notice of Right
of Rescission described above, Plaintiff is entitled to, and
exercise his right of rescission of the Transaction without
further notice.

48.

On or about October 22, 2009, Plaintiffs sent a qualified
written request ("QWR") as that term is defined under 12 U.S.C.
§ 2605(e)(1)(B), and a valid Notice to Rescind by and through
their legal counsel to Suntrust Mortgage, Inc., 350 North lake
Destiny Rd., Maitland, Florida 32751 and incorporated as if
fully stated herein by reference as "EXHIBIT C". 55.

The QWRs and valid rescission notices request rescission,
specific information and documentation disclosures material to
ownership of this obligation under 15 U.S.C. § 1641(f)(2), as
well as Servicer related disclosures.

49.

Said Notices are sufficiently stated requesting an
accounting under the purported collateral instruments,
requesting tender obligations, and disputing the amount of
lawful indebtedness.

50.

Plaintiffs now dispute any alleged default due to
rescission of the Transaction.

51.

Upon information and belief. Defendants have failed to
correctly apply Plaintiff's previous payments correctly.

52.

Defendants are fully aware of the TILA rescission notice,
violations, their duty to comply with the requirements set
forth by RESPA, and their failure to provide a lawful response
is clear evidentiary intent contrary to applicable federal
statutes, contrary to fiduciary duties, and contrary to the
contract between the parties.

53.

As of this date, Defendants have utterly failed to rescind
all enforcement of the collateral instruments, or to take any
action to invalidate the security instrument, or rescind any
Notice of Default and Election to Sell under a non-judicial
foreclosure claim.

54.

Defendants failed to cease collection activity under RESPA.

The foregoing acts and omissions of the Defendants were undertaken willfully, persistently, intentionally, knowingly, and/or in gross or reckless disregard of the rights of the Plaintiff.

## VI.
## CAUSES OF ACTION
### COUNT 1
### TILA RESCISSION

55.

Plaintiff incorporates paragraphs 1-62 set forth above as if fully stated herein.

56.

As a result of Defendants failure to provide accurate material disclosures correctly with a proper Notice of Right of Rescission described above, Plaintiffs are entitled and have exercised their right of rescission of the Transaction.

57.

Rescission of the Transaction extinguishes any liability Plaintiff has to Defendants for finance or other charges arising from the Transaction.

58.

Defendants have failed to take any action to reflect the termination of the security interest in the Property within twenty (20) days of the rescission or seek judicial guidance and said failure should release Plaintiff from any liability

whatsoever to Defendants arising from the Transaction.

59.

Defendants have a fiduciary duty and obligation to perform upon notice of rescission by canceling the Transaction as well as any enforcement thereof. Accordingly, any alleged security instrument is void and unenforceable under 15 U.S.C. § 1635(b).

68.

Defendants had twenty-days (20) to refund or credit the alleged account, all monies paid and to void the security interest and Defendants have failed in their obligation to perform this duty and make a tender offer, thus the Defendants have ignored the rescission notices and forfeited their right to receive any tender amount whereby the property implicitly vests in the Plaintiffs.

60.

Defendants performance is a condition precedent to Plaintiffs' duty to tender and failure to respond gives rise to statutory and actual damages under 15 U.S.C. § 1640.

61.

Any further acts to enforce an invalid security instrument

are wrongful, improper, and a serious breach of the fiduciary duty associated with Defendants obligations. Such acts violate TILA and RESPA, and are contrary to the explicit statutory requirements and contract between the parties.

## COUNT 2
### TILA DISCLOSURE CLAIMS IN RECOUPMENT MATERIAL TO RESCISSION

62.

Plaintiff incorporates paragraphs 1-62 above as if fully set forth herein.

63.

The original payee of the note and beneficiary of all other documents at a purported closing with Defendants acted in contravention of TILA 15 U.S.C. § 1601 et seq. and Reg. Z in the following particulars, each and all of which may be asserted now affirmatively and defensively by Plaintiff to block any non-judicial foreclosure.

64.

The Defendants failure to provide TILA Disclosures materially related to this consumer credit transaction violated the requirements of Truth in Lending and Regulation Z in the following particulars:

(a)   By failing to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Reg. Z § 226.17(b);

(b)   By failing to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Reg. Z § 226.17(a);

(c)   By failing to properly identify property subject to a security interest in violation of 15 U.S.C. § 1638(a)(9) and Reg. Z § 226.18(m);

(d)   By failing and improperly disclosing the finance charge in violation of 15 U.S.C. § 1638(a)(3) and Reg. Z § 226.18(d);

(e)   By failing to properly and accurately disclose the Amount Financed;

(f)   Defendants failed to provide and include in the loan documents two (2) copies, notices of the right to cancel or rescind, a violation under 15 U.S.C. § 1635(a); Reg. Z 226.23(b).

## COUNT 3

### FRAUD AND FRAUD IN THE INDUCEMENT

66.

Plaintiff incorporate paragraph 1-65 set forth above as if fully stated herein.

67.

The Defendants provided an appraisal that was higher that
what the appraisal on the property should have been in August
14, of 2007.

68.

Said fraudulent appraisal as well as statements by the
loan originator encouraged and persuaded Plaintiff to borrow
more than necessary on his refinance.

69.

Statements made by the loan officer upon application, upon
the appraisal and at closing encouraged and persuaded
Plaintiff to sign a loan that was excessive in amount and
predatory in type and interest rate.

70.

Additionally, there were excessive fees charged which upon
information and belief, were unauthorized and illegal kick
backs to various participants in the loan process.

71.

Plaintiff never received a copy of the Good Faith Estimate
nor was he every provided with any other lender or other
lender rates prior to closing.

72.

Plaintiff was told he was going to have a fixed rate which

was switched to an ARM just before closing but told by the

loan originator at closing that he, Plaintiff, could switch it

to fixed after two years.

73.

Said actual fraud and fraud in the inducement has caused

Plaintiff damages in that he was the borrower on a loan that

was designed to fail.

74.

But for the fraud and the fraud in the inducement by the

lender through his agents, Plaintiff would not have qualified

for any loan whatsoever and would not have a loan which he

could not afford.

75.

Plaintiff has been damaged by the actions of the lender and

is entitled to damages.

### COUNT 4

### UNFAIR BUSINESS PRACTICES

76.

Plaintiff incorporates paragraphs 1-75 above as if fully

set forth herein.

77.

Plaintiff is acting in this capacity to remedy the ongoing

unlawful, unfair and fraudulent business practices alleged

herein, and to seek injunctive relief and restitution on his behalf as being affected thereby.

78.

The Georgia Fair Business Practices Act, O.C.G.A. §10-1-390 et seq. defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice and provides that a court may order injunctive relief and restitution to affected parties as a remedy for any violations of the FBPA.

79.

Beginning on the dates indicated and at all times material herein, including but not limited to, Defendants' failure to respond and act on the QWR letters, thy  have committed acts of unfair competition proscribed by the FBPA including the practices alleged herein against Plaintiffs.

80.

Prior to the filing of the complaint in this action, and continuing thereafter, Defendants have systematically violated the provisions of TILA, RESPA, the Transaction, the contract between the parties, and to such extent as to induce confusion of source, sponsorship of services, and rescission rights of Plaintiff.

81.

These violations are and were a matter of Defendants standard corporate policy, and constitute a consistent pattern and practice of unlawful corporate behavior.

82.

The business acts and practices of Defendants, as hereinabove alleged, constitute "unlawful" business practices under FBPA in that, for the reasons set forth above, said acts and practices violate the provisions of TILA, RESPA, the Transaction, and contract between the parties.

83.

The business acts and practices of Defendants, as hereinabove alleged, constitute unfair" business practices under FBPA in that said acts and practices offend public policy and affect trade and commerce. Said acts and practices have no utility that outweighs their substantial harm to the Plaintiff.

84.

In the course of this Transaction, the Defendants made one or more misrepresentations and/or failed to make accurate representations and/or failed to provide material information about the Transaction as set forth more fully above.

85.

Specifically Defendants processed, ratified, and serviced the Transaction, yet utterly failed to provide effective Notice of Right to Cancel, failed to honor a valid rescission, failed to seek judicial guidance within twenty-days (20) of a rescindable Transaction, failed to accurately disclose material TILA Disclosure Statements, failed to materially abide by RESPA, and failed to comply with substantive laws of conveyance.

86.

Said misrepresentations and failure to make accurate representations were made knowingly or with reason to know that Plaintiff would rely thereon.

87.

Said misrepresentations and failure to make accurate representations were material to the Transaction from origination to present.

88.

Said misrepresentations and failure to make accurate representations were made with intent and the Plaintiffs relied thereon by sending a QWR, a valid Rescission Notice, and filing this claim.

89.

Plaintiff did reasonably rely as specified in these factual allegations.

90.

Plaintiff was thereby damaged and has a substantial ascertainable loss.

91.

The business acts and practices of Defendants, as hereinabove alleged, constitute "fraudulent" business practices under the FBPA in that said acts and practices are likely to deceive the public and affected consumers as to their legal rights and obligations, and by use of such deception, fail to provide material documents at Closing and concealment, may preclude consumers from exercising legal rights to which they are entitled.

92.

The unlawful, unfair and fraudulent business acts and practices of Defendants described herein present a continuing threat to members of the general public and the Plaintiffs in that Defendants are currently engaging in such acts and practices, and will persist and continue to do so unless and until an injunction is issued by this Court.

93.

Pursuant to the FBPA Plaintiff seeks an order enjoining Defendants from engaging in the acts and practices as hereinabove alleged, and ordering that Defendants credit the Transaction and provide appropriate restitution to the Plaintiff.

94.

Plaintiff seeks an order enjoining Defendants from engaging in any sort of foreclosure action against Plaintiff during the pendency of this action until all issues are resolved.

95.

Plaintiff seeks recovery of attorneys' fees, costs and expenses incurred in the filing and prosecution of this action pursuant to O.C.G.A § 9-15-14 and any other applicable law.

COUNT 5

PUNITIVE DAMAGES

96.

Plaintiff incorporates paragraphs 1-95 above as if fully set forth herein.

97.

Defendants' acts of fraud and fraud in the inducement are intentional torts and Defendants' took advantage of Plaintiff's lack of knowledge in the mortgage industry, lack

of knowledge in the true appraised value of his home and lack of understanding of consumer finance guidelines and procedures.

98.

As a consumer, Plaintiff justifiably relied on professionals such as the appraiser, the loan officer and the lenders to deal honestly and fairly with him.

99.

Defendants took advantage of this Plaintiff and encouraged him through their lies and deception into executing a loan that was  predatory in nature and not in Plaintiff's best interest.

100.

Defendants' actions throughout this Transaction were willful, and were done with malice, fraud, wantonness, oppression, and/or that entire want of care which would raise the presumption of conscious indifference to consequences.

101.

Defendant should be punished and detered from such predatory behavior under O.C. G. A. § 51-12-5.1.

COUNT 6

JURY TRIAL DEMAND

102.

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and hereby demands, a trial by jury

VIII.

**PRAYER FOR RELIEF**

**WHEREFORE,** as a result of the violations of TILA, RESPA, and Regulation Z, pursuant to 15 U.S.C. §§ 1635(a), 1640(a), and 1641(c), Plaintiff prays for judgment against Defendants as follows:

a. Rescission of this Transaction,

b. Award the value of the security interest in Plaintiffs property created under the Transaction,

c. Return of any and all monies or property given by Plaintiff to anyone, including the Defendants, in connection with this Transaction,

d. Statutory damages of no less than $2,000 for material disclosure violations as provided under 15 U.S.C. § 1640,

e. Statutory damages of no less than $2,000 for Defendants' failure to respond properly to Plaintiffs' valid rescission notice,

f. Enjoin Defendants during the pendency of this

-24-

action, from recording any deeds or mortgages regarding the property or from otherwise taking any steps to deprive Plaintiff of ownership of the property without restitution.

h.    Award Plaintiff actual damages, injunctive relief, and restitution, and further damages for fraud and fraud in the inducement, tortuous interference with business relations, unfair business practices.

i.    Award Plaintiff statutory damages as provided RESPA,

J.    Award Plaintiff reasonable attorney fees and costs of suit.

K.    That Defendants be ordered to pay punitive damages under O.C.G.A. § 51-12-5.1 to punish and deter their predatory practices in the future.

L.    Award Plaintiff such other and further relief as the Court may deem just.


This 26th day of October, 2009.

Daniel L. & Rebecca Ley
Plaintiff's Pro Se
10108 Chorlton Circle
Orlando, Florida 32832
305-699-3955